UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR EUGENE TYES,<br><br>Petitioner,<br><br>v.<br><br>STUART SHERMAN,<br><br>Respondent. | No. 2:15-cv-02655 JAM GGH<br><br>FINDINGS AND RECOMMENDATIONS |

*Introduction*

Petitioner, a state prisoner proceeding in pro se, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302. Pending before the court, is respondent's motion to dismiss. ECF No. 12. Petitioner has filed an opposition, and respondent a reply. ECF Nos. 20, 21.

*Procedural Background*

Petitioner was convicted by a Sacramento County Superior Court jury of first-degree murder and shooting at an inhabited dwelling. See Tyes v. McEwen, No. 2:12-cv-1755 TLN DAD P, 2013 WL 1832713, at *1 (E.D. Cal. May 1, 2013). On January 28, 1994, petitioner was sentenced to state prison for thirty years to life. Id.

Petitioner appealed, and the California Court of Appeal for the Third Appellate District

1

affirmed the judgment on January 4, 1995. Tyes, 2013 WL 1832713, at *1. On March 15, 1995, the California Supreme Court denied review of petitioner's direct appeal. Id.

On August 26, 2003, petitioner filed a petition for writ of habeas corpus in Sacramento County Superior Court, and was denied on September 24, 2003. Tyes, 2013 WL 1832713, at *1. On July 1, 2004, petitioner filed a habeas petition in the California Supreme Court, and was denied on June 15, 2005. Id. On May 2, 2011, petitioner filed a second habeas petition with the Sacramento County Superior Court, and was denied on December 27, 2011. Id. On January 19, 2012, petitioner filed a habeas petition with the California Court of Appeal, and was denied on February 2, 2012. Id. On February 9, 2012, petitioner filed his second habeas petition with the California Supreme Court, and was denied on May 16, 2012. Id.

On June 20, 2012, petitioner filed a federal habeas petition in the United States District Court, Eastern District of California. See Dkt. in Case No. 2:12-cv-1755 TLN DAD P (E.D. Cal). On April 30, 2013, the Magistrate Judge issued Findings and Recommendations recommending the federal petition was untimely because it was filed outside AEDPA's one-year statute of limitations. See generally Tyes, 2013 WL 1832713. The Magistrate Judge did not find that petitioner was entitled to equitable tolling based on petitioner's allegations of mental impairment and illiteracy. Id. at *3-7. Accordingly, the Magistrate Judge recommended granting respondent's motion to dismiss the petition as procedurally barred. On October 2, 2013, the District Judge adopted the Magistrate Judge's Findings and Recommendations in full.[1] See Dkt. No. 28 in Case No. 2:12-cv-1755 TLN DAD P (E.D. Cal).

On February 18, 2014, petitioner filed a third habeas petition with the Sacramento County Superior Court, and was denied on September 22, 2014. ECF No. 13-1 at 1-6. On October 23, 2104, petitioner filed a second habeas petition with the California Court of Appeal, and was denied on November 13, 2014. ECF No. 13-2 at 1, 3-128. Petitioner filed his third habeas petition with the California Supreme Court on December 19, 2014. ECF No. 13-3 at 1.

---

[1] The District Judge also addressed petitioner's objections relating to "new evidence" of petitioner's mental illness and found it did not alter the Findings and Recommendations. See Dkt. No. 28, fn.1 in Case No. 2:12-cv-1755 TLN DAD P (E.D. Cal).

However, the California Supreme Court withdrew the petition pursuant to petitioner's written request to withdraw the petition. Id. On March 4, 2015, petitioner filed a third habeas petition with the California Court of Appeal, and was denied on March 12, 2015. ECF No. 13-4 at 1, 3-125. On March 30, 3015, petitioner filed his fourth habeas petition with the California Supreme Court, and was denied on June 10, 2015. ECF No. 13-5 at 1, 2-129.

On December 23, 2015, petitioner filed the instant federal petition, ECF No. 1.[2] On January 29, 2016, the undersigned dismissed the case without prejudice to its refiling upon obtaining authorization from the United State Court of Appeals for the Ninth Circuit as the petitioner represented a successive petition. ECF No. 5. On September 1, 2016, petitioner filed an application in the Ninth Circuit for leave to file a second or successive petition in federal court. ECF No. 8. The Ninth Circuit granted the application and the case was reopened on July 14, 2017. ECF No. 7. On September 21, 2017, respondent moved to dismiss the petition as second or successive. ECF No. 17. Petitioner filed an opposition to the motion to dismiss, and respondent has filed a reply. ECF Nos. 20, 21.

*Legal Standards*

The Antiterrorism and Effective Death Penalty Act ("AEDPA") "generally limits a petitioner to one federal habeas corpus motion and precludes second or successive habeas corpus petitions unless the petitioner meets certain narrow requirements. Jones v. Ryan, 733 F.3d 825, 834 (9th Cir. 2013) (citing 28 U.S.C. § 2244(b)) (internal quotations omitted). "The statute provides that '[a] claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless' it 'relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable' or on newly discovered facts that show a high probability of actual innocence." Jones, 733 F.3d at 834 (citing 28 U.S.C. § 2244(b)(2)(A)-(B), and

---

[2] The court affords petitioner application of the mailbox rule as to all his habeas filings in state court and in this federal court. Houston v. Lack, 487 U.S. 266, 275–76 (1988) (pro se prisoner filing is dated from the date prisoner delivers it to prison authorities); Stillman v. Lamarque, 319 F.3d 1199, 1201 (9th Cir.2003) (mailbox rule applies to pro se prisoner who delivers habeas petition to prison officials for the court within limitations period).

Gonzalez v. Crosby, 545 U.S. 524, 529-30 (2005)). "'Generally, a new petition is "second or successive" if it raises claims that were or could have been adjudicated on their merits in an earlier petition.'" Woods v. Carey, 525 F.3d 886, 888 (9th Cir. 2008) (quoting Cooper v. Calderon, 274 F.3d 1270, 1273 (9th Cir. 2001)). Here, petitioner is raising a previously raised claim and two new claims not previously presented in petitioner's prior petitioner for writ of habeas corpus. However, the present petition challenges the same 1993 conviction at issue in petitioner's prior petition.

As noted, petitioner has received prior authorization from the Ninth Circuit Court of Appeals to file this petition. However, it does not preclude the district court from finding that the petition is successive and the claims are barred. See 28 U.S.C. § 2244(b)(2). Although the Ninth Circuit may authorize a filing only if petitioner has made a "'prima facie showing' that the application satisfies the statutory standard" pursuant to 28 U.S.C. § 2244(b)(3)(C), "to survive dismissal in district court, the applicant must actually 'sho[w]' that the claim satisfies the standard. Tyler v. Cain, 533 U.S. 656, 661 n.3 (2001); see also U.S. v. Villa-Gonzalez, 208 F.3d 1160, 1165 (9th Cir. 2000) ("[U]nder section 2244(b)(4), a district court must conduct a thorough review of all allegations and evidence presented by the prisoner to determine whether the motion meets the statutory requirements for the filing of a second or successive motion.")

The claims contained in the present petition rely on new evidence in the form of declarations. To obtain relief in a second or successive petition based on newly discovered facts, petitioner must show that: (1) "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence;" and (2) that "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying defense." 28 U.S.C. § 2244(b)(2)(B)(i),(ii).

*Factual Background*

The court has conducted a thorough review of the record in this case, as well as the California Court of Appeal, Third Appellate District's unpublished memorandum and opinion affirming petitioner's judgment of conviction on direct appeal. The appellate court's summary of

4

the facts is consistent with the court's own review of the record. Accordingly, it is provided below:

> Late in the afternoon in April 1993, defendant was standing near Norm's Liquor Store while talking to some acquaintances. He noticed an individual named Ronnie Carlock.[3] The defendant pulled a bandanna up over his face and approached Mr. Carlock.[4] After the two exchanged hostile words, the defendant pulled a gun from his pocket and pointed it at Mr. Carlock. In response, Mr. Carlock removed his hands from his pockets, dropping loose change and a pager on the ground. Retrieving these objects, Mr. Carlock entered his car and started to drive away. The defendant began to walk back toward his companions. In the midst of crossing the street, the defendant turned and fired five shots toward the retreating vehicle. None of these shots hit the intended target. However, one of the bullets traveled approximately 800 feet and struck the victim (Fred Lawson) in the head, who died soon thereafter.
>
> Mr. Lawson was a little league coach (coincidentally, he had previously coached defendant). At the time of the killing, Mr. Lawson was in the Grant High School parking lot getting baseball equipment from the trunk of his car. Although the victim was not visible to defendant, the bullet traveled a direct path from defendant's location on Balsam Avenue past several fences, trees and apartment buildings to the Grant High School parking lot some 800 feet away.
>
> After firing these shots, defendant ran from the scene with gun in hand. The gun, recovered from the roof of Norm's Liquor Store where defendant had discarded it, contained defendant's fingerprints and held five expended shells. Although defendant initially lied about his involvement in the victim's death, he later admitted firing the shots and attempted to assert a theory of self-defense at trial. The prosecution based its case on a theory of transferred intent.

People v. Arthur Eugene Tyes, No. C017699, slip op. at 2-3 (Cal. Ct. App. Jan. 4, 1995).

***Discussion***

Petitioner seeks federal habeas relief on the following three grounds: (1) "in light of the newly discovered evidence, petitioner was deprived of both his United States and California constitutional right to effective assistance of trial counsel, as to result in a fundamental unfair trial when trial counsel failed to adequately investigate and present evidence which would have undermined the structure of the State['s] case[;]" (2) "in light of newly discovered evidence

---

[3] [Fn. 1 in original excerpted text] Mr. Carlock was not among the witnesses called at trial, and was identified only by defendant in his testimony.

[4] [Fn. 2 in original excerpted text] Defendant testified he initially donned the bandanna to disguise himself, but shed it once he realized Mr. Carlock recognized him.

5

establishing that false evidence was introduced against petitioner's trial, this court must reduce petitioner's culpability from that of first degree murder, to that of manslaughter because a failure to do so would result in a denial of both petitioner's California and federal constitutional right to due process, equal protection of law, and fundamental fairness[;]" and (3) "in light of newly discovered evidence establishing reduced culpability, petitioner's conviction of first degree murder should be reduced to manslaughter because a failure to do so would result in a denial of both petitioner's California and federal constitutional right to due process, equal protection of law, and fundamental fairness."[5] ECF No. 1 at 5, 15-21.

Respondent maintains that the petition fails to meet the standards set forth in 28 U.S.C. § 2244(b)(2) and accordingly that the court should dismiss the petition as second or successive pursuant to 28 U.S.C. § 2244(b)(4). ECF No. 12 at 1-2. In the alternative, respondent argues the claims are untimely under 28 U.S.C. § 2244(d)(1). Id. at 2. Petitioner opposes the motion on the basis that respondent's arguments are moot. ECF No. 20 at 1-2. Petitioner argues he has satisfied the necessary requirements of 28 U.S.C. § 2244(b)(2)(B) based on the Ninth Circuit's authorization to file a second or successive petition. Id. Petitioner contends that the Ninth Circuit has "already determined petitioner's claims" were pursued with due diligence and that in light of the new evidence "no reasonable factfinder would have found petitioner guilty of the underlying offense." Id. at 2 (citing 28 U.S.C. § 2244(b)(2)(B)(i),(ii)). Petitioner further argues the newly discovered evidence establishes that petitioner is "factually innocent of first degree murder[.]" Id.

However, the fact that the Ninth Circuit has granted petitioner authorization to proceed on a second or successive petition in federal district court, does not preclude a district court from dismissing the petition as second or successive for failing to meet the requirements of §

---

[5] In his first federal petition, petitioner presented the following grounds for relief: (1) "Prosecution failed to establish intent under transferred intent theory and as a result petitioner's federal & state constitutional rights were violated under the Fourteenth Amendment of the U.S. Constitution[;]" (2) "prosecution failed to meet the elements of first degree murder and as a result petitioner's federal and state constitutional rights were violated under the Fourteenth Amendment of the U.S. Constitution[;]" and (3) "Trial counsel was ineffective and petitioner[] was prejudiced as a result of trial counsel's ineffectiveness and his federal and state constitutional rights were violated under the 5th, 6th, & 14th, Amendment[s] of the United States Constitution." See Dkt. No. 1 at 4-5 in Case No. 2:12-cv-1755 TLN DAD P (E.D. Cal).

2244(b)(2)(B). Villa-Gonzalez, supra. Accordingly, this court will "conduct a thorough review of all allegations and evidence presented by [petitioner] to determine whether the motion meets the statutory requirements for the filing of a second or successive motion." Villa-Gonzalez, 208 F.3d at 1165.

### A. New Evidence

Petitioner presents new evidence in the form of two declarations by Keith Renell Henderson ("Henderson") and Anthony Augustus ("Augustus"). ECF No. 1 at 42-44 (Notarized Declaration of Keith Renell Henderson, dated November 27, 2013, Exhibit 4 ("Henderson Decl.")); 45-47 (Notarized Declaration of Anthony Augustus, dated January 9, 2014, Exhibit 5 ("Augustus Decl.")).

#### 1. Henderson Declaration

In Henderson's declaration, he declares that during petitioner's trial he gave false accounts of what he had witnessed on the day of the incident. Henderson Decl. at ¶ 6. On the day of the incident, Henderson declares he was on his way to Norm's when he heard gunfire. Id. at ¶¶ 2-3. Henderson did not witness what had occurred prior to the shooting or whether petitioner had a gun. Id. at ¶ 4. Instead, he only witnessed petitioner fleeing the area. Id. at ¶ 3. Henderson declares that he was motivated to testify falsely during petitioner's trial due to the impact Mr. Lawson's death had on the community and himself. Henderson declares that the influence of others also led him to testify falsely. Id. at ¶ 8. Henderson is not able to "recall exactly where [he] obtained the false version[] of event[s] given to me to detectives, investigators, and or testified to by me at [] trial[.]" Id. However, Henderson declares that now as an adult, and "understanding the impact of [his] action[s] as a child" led him to recant his trial testimony. Id. at ¶9. Henderson was 13 years old at the time of the incident. Id. at ¶1.

#### 2. Augustus Declaration

In Augustus' declaration, he declares that at the time of the incident he observed petitioner and Ronnie Carlock exchanging hostile words. Augustus Decl. at ¶ 1. After the "altercation had ended," Augustus declares that Ronnie Carlock got into his car and begin to drive away, while petitioner turned around and began to cross the street. Id. at ¶ 2. Augustus "observed an object

7

protrude from the window of Ronnie Carlock's car, outwards towards [petitioner's] back, an object which [Augustus] believed was a gun." Id. Augustus yelled out to petitioner "Look Out!" which is when petitioner turned around and fired a gun that was retrieved from petitioner's pocket. Id. Augustus declares that he had failed to come forward with this information at the time of Mr. Lawson's death, because there was a rumor that he had been involved. Id. at ¶ 3. Augustus declares that this potential accusation, along with his parole status, resulted in him from failing to come forward with this information at the time of the incident. Id. at ¶4.

B. <u>Analysis</u>

For claims "presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." 28 U.S.C. § 2244(b)(1). However, for claims presented in a second or successive habeas corpus application under section 2254, that were not presented in a prior application, shall be dismissed unless petitioner has met one of the narrow exceptions for a second or successive petition pursuant to 28 U.S.C. § 2244(b)(2)(B). The court must consider whether petitioner has shown that: (1) "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence;" and (2) that "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying defense." 28 U.S.C. § 2244(b)(2)(B)(i),(ii). Here, petitioner has presented to the court a mix of claims that fall within the parameters of 28 U.S.C. § 2244(b)(1) and (2).

    1. <u>Claims Previously Presented in Prior Habeas Petition</u>

        <u>Claim One: Ineffective Assistance of Counsel</u>

Petitioner argues counsel's failure to investigate Keith Henderson ("Henderson") and Anthony Augustus ("Augustus") prior to trial constitutes ineffective assistance of counsel. Petitioner argues trial counsel had "at his fingertips" reports from the police and the district attorney that contained statements from Henderson and Augustus. Specifically, petitioner argues had trial counsel investigated, he would have discovered the following new evidence: "that petitioner discharged the gun as a result of Mr. Augustus yelling to petitioner to 'look-out' and

that Mr. Henderson's childhood relationship with the victim and the relationship of his family members with that same victim gave Mr. Henderson reason to testify falsely." ECF No. 1 at 16. Petitioner contends that had this evidence been presented at trial, a reasonable jury would have found petitioner guilty of manslaughter based on a theory of self-defense. Id.

In petitioner's original habeas petition, he had raised a claim for ineffective assistance of counsel based on trial counsel's failure to present a defense of diminished capacity based on petitioner's mental health condition. See Dkt. No. 1 at 5 in Case No. 2:12-cv-1755 TLN DAD P (E.D. Cal). The petition was dismissed based on timeliness. See Dkt. No. 22 in Case No. 2:12-cv-1755 TLN DAD P (E.D. Cal). A "dismissal of a section 2254 habeas petition for failure to comply with the statute of limitations renders subsequent petitions second or successive for purposes of the AEDPA, 28 U.S.C. § 2244(b)." McNabb v. Yates, 576 F.3d 1028, 1030 (9th Cir. 2009). Therefore, even though petitioner presents new factual explanations for his ineffectiveness of counsel claim, "[a] ground for habeas relief is 'successive' if the basic thrust or gravamen of the legal claim is the same, regardless of whether the basic claim is supported by new and different legal arguments[.]" Babbitt v. Woodford, 177 F.3d 744, 746 (9th Cir. 1999). Accordingly, Claim One is subject to mandatory dismissal under 28 U.S.C. § 2244(b)(1) and should therefore be dismissed.

2. Claims Not Presented in a Prior Habeas Petition

Claim Two: False Evidence

In Claim Two, petitioner argues Henderson's declaration establishes that false evidence was introduced during petitioner's trial. Petitioner states that sometime in 2013, petitioner had a phone call conversation with his cousin, Ms. Shawn M. Houston, who had informed him that Henderson had been trying to contact petitioner to discuss petitioner's case and conviction. ECF No. 1 at 9 ¶ 23. It was shortly thereafter that Henderson provided petitioner's cousin with a notarized declaration. Id. Henderson's declaration purports to recant portions of his trial testimony. Petitioner argues that Henderson's false testimony was the sole basis for his conviction. ECF No. 1 at 17. Petitioner argues without this testimony the prosecution would have been unable to establish the intent element for a finding of first-degree murder. Id. at 18.

Petitioner argues, there would have been a high probability that any reasonable jury would have rendered a different verdict. Id.

The court must determine whether petitioner's "newly discovered evidence" presented in the form of Henderson's declaration is sufficient to satisfy §2244(b)(2)(B). The court first considers whether "the factual predicate for [petitioner's] claim could have been discovered previously through the exercise of due diligence." See 28 U.S.C. § 2244(b)(2)(B)(i). In reviewing the petition, petitioner provides in Claim One factual allegations that there was evidence of Henderson's false testimony that was readily available four months prior to trial. ECF No. 1 at 16. Petitioner states that evidence of Henderson's personal relationship with the victim and the influence of his family's relationship with the victim, supported a motive for Henderson to testify falsely that was readily accessible to trial counsel. Id. By petitioner's own admission, evidence of Henderson's false testimony was readily accessible prior to trial. Such admission would necessarily prove that the falsity of Henderson's testimony could have been discovered earlier than 20 years later had petitioner exercised due diligence. Accordingly, petitioner fails to show that he could not have discovered the factual predicate of Claim Two through due diligence.

Even assuming petitioner established due diligence, petitioner fails to show "that the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [petitioner] guilty of the underlying offense." See 28 U.S.C. § 2244(b)(2)(B)(ii). Henderson's recanted testimony 20 years later is highly suspicious. See Dobbert v. Wainwright, 468 U.S. 1231, 1233-34 (1984) (Witness recantation is "properly viewed with great suspicion. It upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction.") First, Henderson does not recall "exactly where [he] obtained the false versions of events." Henderson Decl. at ¶ 8. Secondly, Henderson declares that despite his trial testimony he did not witness petitioner's actions prior to or after he heard the gunshots. Id. at ¶ 4. Henderson declares he only

witnessed petitioner fleeing the area. However, petitioner neither contests that he fired the gunshots at the time of the incident, nor that one of the gunshots killed an innocent bystander. Petitioner merely argues a theory of self-defense. Moreover, Henderson does not entirely recount his testimony. See Res't's Lodg. Doc. No. 13-6 at 239-295 (Reporters' Transcript ("RT") 222-278). Henderson testified at trial that he had <u>heard</u> someone tell petitioner at the time of the incident "Arthur, you should have shot him." See Res't's Lodg. Doc No. 13-6 at 245-246. Afterwards, the gunshots were fired. Id. Henderson does not recant what he heard the day of the incident. A reasonable jury would still have found petitioner guilty of first degree murder and rejected petitioner's theory of self-defense in light of the evidence presented at trial. Henderson's declaration fails to establish by clear and convincing evidence that but for constitutional violation, no reasonable factfinder would have found petitioner guilty of first-degree murder, as required by 28 U.S.C. § 2244(b)(2)(B)(ii).

Accordingly, Claim Two should be dismissed under 28 U.S.C. § 2244(b)(2)(B).

Claim Three: Reduced Culpability

In Claim Three, petitioner argues the newly discovered evidence presented in Henderson and Augustus' declarations "point unerringly to innocence or reduced culpability." ECF No. 1 at 19-21 (citing to <u>In Re Clark</u>, 5 Cal.4th 750, 766 (1993)). Therefore, petitioner argues his first-degree murder conviction should be reduced to manslaughter. Because the court has found that the evidence presented in Henderson's declaration fails to meet the necessary requirements in 28 U.S.C.§ 2244(b)(2)(B), the court will not address this in this section. However, the court will turn next to whether the new evidence in Augustus' declaration "could have been discovered previously through the exercise of due diligence." See 28 U.S.C. § 2244(b)(2)(B)(i). The court finds it does not.

Augustus declaration declares that it was his warning to petitioner to "Look Out!" that resulted in petitioner turning and firing the gun at Ronnie Carlock. Augustus Decl. at ¶2. Petitioner relies on this evidence to support his contention that his conviction should be reduced to manslaughter based on a theory of self-defense. However, the asserted warning shouted by Augustus was known to petitioner at the time of trial. Petitioner has known about the facts alleged

in Augustus' declaration.  During cross-examination, petitioner testified as to who was around him during the shooting:

> Q: How many people were standin' around in that lot area?
>
> A: Probably about four or five.
>
> Q: Besides Treetop, who were they?
>
> A: Fat Tommy, Anthony A[u]gustus (ph
>
> Almost t).
>
> The Court: I didn't hear that.
>
> The Witness: Fat Tommy, Anthony A[u]gustus, few more other people. I don't, I don't recall.

ECF No 13-8 at 55-56 (RT 651-652).  At the time of trial, petitioner was aware of Augustus presence at the time of the incident, and was also aware at the time of trial that Augustus did not testify during the trial nor disclose that petitioner had shot the gunshots due to a warning to "Look Out!"  Petitioner fails to offer sufficient justification for failing to present this argument earlier, nor does petitioner show that the evidence could not have discovered through the exercise of due diligence as the evidence has been available since the time of trial.  Petitioner fails to show that he could not have discovered the factual predicate of Claim Three through due diligence as required by 28 U.S.C. § 2244(b)(2)(B)(i).  Accordingly, Claim Three should be dismissed under 28 U.S.C. § 2244(b)(2)(B).

The record before the court clearly demonstrates that the pending petition fails to meet the requirements for the filing of a second or successive petition under 28 U.S.C. § 2244(b). Accordingly, the court should dismiss the petition pursuant to 28 U.S.C. § 2244(b)(4).[6]

*Conclusion*

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the

---

[6] In light of the court's finding that the petition is successive, respondent's alternative argument that it should be dismissed as untimely need not be addressed here.

denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss, ECF No. 12, be granted;

2. The petition for writ of habeas corpus, ECF No. 1, be dismissed with prejudice; and

3. The District Court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: September 3, 2018

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

13